UNITED STATES DISTRICT COURT                    **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
BRENDAN D. DOOLEY and DONNA DOOLEY,    :    06 Civ. 5644 (JCF)
                                       :
                                       :        MEMORANDUM
               Plaintiffs,             :    AND   ORDER
                                       :
     - against -                       :
                                       :
                                       :
                                       :
COLUMBIA PRESBYTERIAN MEDICAL CENTER,  :
JAMES McMURTRY, III, M.D., J. GILBERT  :
STONE, M.D., and MIN YIM, M.D. a/k/a   :
SUNG C. YIM, M.D.,                     :
                                       :
               Defendants.             :
- - - - - - - - - - - - - - - - - - -  :
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     Dr. Gilbert Stone is a defendant in this medical malpractice
action.  He brings the instant motion to dismiss all claims brought
against him pursuant to Rules 41(b) and 12(c) of the Federal Rules
of Civil Procedure.

Background

     On July 24, 1997, Brandon Dooley had lumbar surgery at
Columbia Presbyterian Medical Center (the "Hospital").  (Amended
Complaint ("Am. Compl."), ¶ 38).[1]  The surgery was performed by Dr.
James McMurtry, and Dr. Stone served as the anesthesiologist. (Am.
Compl., ¶¶ 39, 40; Anesthesia Record dated July 24, 1997, attached
as Exh. J to Affidavit of Angela M. Ribaudo dated Oct. 14, 2008

---

     [1] The Complaint and the Amended Complaint contain identical
allegations with respect to the alleged malpractice.  The Amended
Complaint, however, first identifies Dr. Stone and Dr. Min Yim by
name as alleged tortfeasors.  The plaintiffs voluntarily dismissed
all claims against Dr. Yim in January 2008.  (Order dated Jan. 22,
2008).

("Ribaudo Aff.")).  Over eight years later, on August 12, 2005, a computed tomography ("CT") scan showed that a catheter or wire had been inadvertently left between two of Mr. Dooley's vertebrae. (Am. Compl., ¶ 46; Advanced Medical Imaging Report, attached as Exh. B to Ribaudo Aff.).   Before this date, Mr. Dooley was completely unaware of the foreign object in his spine.  (Compl., ¶ 46).

Thereafter, on July 27, 2006, Mr. and Ms. Dooley commenced a medical malpractice suit against the Hospital, Dr. McMurtry, and a "'John Doe,' M.D., (First and last names being fictitious and uncertain, intended to be the anesthesiologist during the surgery of July 24, 1997)."  (Compl.).  The Hospital and Dr. McMurtry duly answered the Complaint, and discovery proceeded.  In March 2007, the Court[2] issued a discovery order, requiring, among other things, that the parties "seek any amendments to the pleadings [or] add new parties" by October 15, 2007.  (Order dated March 28, 2007, ¶ 5).

The plaintiffs twice requested that the defendants produce Mr. Dooley's patient records, first in October 2006 and again in March 2007.  (Affirmation of Katharine G. Hall dated Nov. 21, 2008 ("Hall

---

[2] Originally, the honorable Judge John E. Sprizzo, U.S.D.J., presided over this case.  On September 9, 2007, the parties consented to referral of the action to me for all purposes pursuant to 28 U.S.C. § 636(c).  Dr. Stone, who was subsequently named as a defendant, never formally indicated his consent to my jurisdiction. Nevertheless, Dr. Stone's consent can be inferred from his failure to express any reservations throughout his active participation in the case.  See Roell v. Withrow, 538 U.S. 580, 586 (2003) (holding that consent to proceedings before magistrate judge can be inferred from party's conduct during litigation).  In any event, in light of the determination of the instant motion, Dr. Stone has suffered no prejudice.

Aff."),  ¶ 5 & Exh. A).   Pursuant to the discovery order, the defendants were to disclose Mr. Dooley's entire record by April 15, 2007.   (Order dated March 28, 2007, ¶ 3).   The records were not produced, however, until defendants' counsel hand-delivered them on September 7, 2007, at which time the plaintiffs first learned that Dr. Stone was the anesthesiologist during Mr. Dooley's surgery. (Hall Aff., ¶ 5; Anesthesia Record dated July 24, 1997).

On October 17, 2007, the plaintiffs "drafted and finalized"[3] a Supplemental Summons and Amended Complaint adding Dr. Stone as a defendant.    (Hall Aff., ¶ 6; Am. Compl.).    After what the plaintiffs characterize as "numerous efforts to locate Dr. Stone," he was served on December 12, 2007.   (Hall Aff., ¶ 6; Sheriff's Certificate of Service, attached as Exh. G to Ribaudo Aff.).   Dr. Stone answered the Amended Complaint on December 24, 2007.[4] (Answer to Amended Complaint).

On October 14, 2008, Dr. Stone filed the instant motion to dismiss on three grounds.   First, he argues that the plaintiffs' failure to amend their Complaint by October 15, 2007 as ordered by the Court warrants dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.[5]   His second ground is similar: he

---

[3] Although the Amended Complaint is dated October 17, 2007, it was not filed with the Court until November 6, 2008.

[4] Similarly, although Dr. Stone's Answer is dated December 24, 2007, it was not filed with the Court until September 29, 2008.

[5] "If the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order, a defendant may move to dismiss the action or any claim against it."  Fed. R. Civ. P. 41(b).

maintains that dismissal under Rule 41(b) is appropriate because the plaintiffs neglected to seek leave of court prior to amending their Complaint as required by Rule 15(a).   Finally, Dr. Stone contends that the plaintiffs' claim against him is barred by the applicable statute of limitations and thus he is entitled to judgment on the pleadings.

Discussion

The plaintiffs' claim against Dr. Stone is barred by the applicable statute of limitations.   There is therefore no need to address the alleged procedural defects; even assuming that the complaint was properly amended to add Dr. Stone as a defendant, the plaintiffs' claim against him would nevertheless fail.

A. Applicable Legal Standard

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."   Cleveland v. Caplaw Enterprises, 448 F.3d 518, 521 (2d Cir. 2006); accord Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).   Accordingly, "the court must accept as true the complaint's factual allegations and draw all inferences in the plaintiff's favor."   Cleveland, 448 F.3d at 521 (quotation marks omitted).   Judgment on the pleadings will therefore not be granted unless it appears that the plaintiff can prove no plausible set of facts in support of his claim which would entitle him to relief.   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, ___, 127 S. Ct. 1955, 1960 (2007).

B.     Statute of Limitations

Subject matter jurisdiction in this case is based on diversity of citizenship.[6]   "[I]t is well established that in diversity cases state law governs not only the limitations period but also the commencement of the limitations period."  Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 709 (2d Cir. 2002) (citing Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 533 (1949), and Guaranty Trust Co. v. York, 326 U.S. 99, 109-10 (1945)).  Accordingly, New York state law determines the applicable statute of limitations here.  In New York, an action for medical malpractice typically must be commenced within two and one-half years of the date of the alleged malpractice.  C.P.L.R. § 214-a. There is an exception, however, applicable to actions based on the discovery of a foreign object in a patient's body.  Under the so-called foreign object rule, "the action may be commenced within one year of the date of such discovery or of the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier."  C.P.L.R. § 214-a.

Although Mr. Dooley's surgery was performed on July 24, 1997, the catheter or wire left in his spine was not discovered until August 12, 2005.  (Am. Compl., ¶¶ 38-40, 46).  Under the foreign object rule, the plaintiffs had one year, until August 12, 2006, to assert their claim.  C.P.L.R. § 214-a.  The plaintiffs' original

_____

[6] The Dooleys are Texas state citizens; the Hospital, Dr. McMurtry, and Dr. Stone are all alleged to be citizens of New York. (Am. Compl., ¶¶ 1-9).   The amount in controversy exceeds $75,000.00.  (Compl., ¶ 11; Am. Compl., ¶ 12).  Thus, diversity jurisdiction is proper.  28 U.S.C. § 1332.

Complaint naming the Hospital and Dr. McMurtry as defendants was timely filed on July 27, 2006.

By contrast, the Amended Complaint naming Dr. Stone as an additional defendant was filed long after the limitations period expired.[7]  For the plaintiffs' claim against Dr. Stone to survive, it must relate back to the date of their original claim under Rule 15 of the Federal Rules of Civil Procedure.  An amendment that adds or changes the name of a defendant "relates back to the date of the original pleading" if (1) the claim arises out of the same conduct, transaction, or occurrence previously set forth, (2) within 120 days of the original filing date, the defendant to be brought into the action "received such notice of the action that it will not be prejudiced in defending on the merits," and (3) the defendant "knew or should have known that the action would have been brought against it but for a mistake concerning the proper party's identity."   Fed. R. Civ. P. 15(c)(1); see also VKK Corp. v. National Football League, 244 F.3d 114, 128 (2d Cir. 2001); Byrd v. Abate, 964 F. Supp. 140, 144-45 (S.D.N.Y. 1997); Harris v. Butler, No. 91 Civ. 6352, 1996 WL 403053, at *1 (S.D.N.Y. July 18, 1996).

The plaintiffs originally sued a "John Doe" anesthesiologist because they were unaware of Dr. Stone's identify.  (Hall Aff., ¶¶ 4-5).  Under Second Circuit law, however, such lack of knowledge is not a "mistake" within the meaning of Rule 15(c).  Malesko v. Correctional Services Corp.,  229 F.3d 374, 383 (2d Cir. 2000),

---

[7] Even if the Amended Complaint had been filed on October 17, 2007, the day it was "drafted and finalized," this was still well after the August 12, 2006 deadline.

rev'd on other grounds, 534 U.S. 61 (2001).  Therefore "'John Doe'
pleadings cannot be used to circumvent statutes of limitations
because replacing a 'John Doe' with a named party in effect
constitutes a change in the party sued." Tapia-Ortiz v. Doe, 171
F.3d 150, 152 (2d Cir. 1999) (quoting Aslanidis v. United States
Lines, Inc., 7 F.3d 1067, 1075 (2d Cir. 1993)).  Accordingly, the
plaintiffs' failure to name Dr. Stone until more than a year after
expiration of the statute of limitations is fatal to their claim
under the law of this circuit.  Id.; accord Malesko, 229 F.3d at
383-84.

Nevertheless, Rule 15 also provides that relation back may be
permitted if "the law that provides the applicable statute of
limitation allows [it]." Fed. R. Civ. P. 15(c)(1)(A).  And, if the
applicable state law "affords a more forgiving principle of
relation back than the one provided in [the federal rule], it
should be available to save the claim." Murphy v. West, 533 F.
Supp. 2d 312, 316 (W.D.N.Y. 2008) (quoting DeRienzo v. Harvard
Industries, Inc., 357 F.3d 348, 353  n.8 (3d Cir. 2004)); see also
Fed. R. Civ. P. 15 advisory committee note for 1991 amendment;
Laureano v. Goord, 06 Civ. 7845, 2007 WL 2826649, at *5 (S.D.N.Y.
Aug. 31, 2007); Lieber v. Village of Spring Valley, 40 F. Supp. 2d
525, 532 (S.D.N.Y. 1999).  Although the language of the relation
back test under state law mirrors that of Rule 15(c),[8] the

---

[8] The New York Court of Appeals has held that an amendment
will generally relate back if (1) the new claim arises out of the
same conduct, transaction, or occurrence set forth in the original
complaint, (2) the new defendant is "united in interest" with the
existing defendants such that he would have notice of the lawsuit

"mistake" requirement under New York law is more flexible than the federal rule.  Specifically, C.P.L.R. § 306-b provides 120 days from the date of filing a "John Doe" complaint for a plaintiff to ascertain the unknown defendant's identity.  Furthermore, this deadline will be extended if "the interests of justice so require." Wilson v. City of New York, No. 03 Civ. 2495, 2006 WL 2528468, at *3 n.11 (S.D.N.Y. Aug. 31, 2006) (citing Leader v. Maroney, Ponzini & Spencer, 97 N.Y.2d 95, 736 N.Y.S.2d 291 (2001)).  However, implicit in the use of the "John Doe" designee is "the need for due diligence in seeking to ascertain the defendant's name."  Vincent Alexander, Practice Commentary to C.P.L.R. § 1024 (1997). Therefore, a plaintiff must demonstrate "genuine efforts to obtain the [defendants' identities] prior to the running of the statue of limitations."  Laureano, 2007 WL 2826649, at *6 (quotation marks omitted); see also Murphy, 533 F. Supp. 2d at 316 (requiring showing of "diligent efforts" to identify unidentified defendant); Wilson, 2006 WL 2528468, at *3 (same); Opiela v. May Industries Corp., 10 A.D.3d 340, 341, 781 N.Y.S.2d 353, 354 (1st Dep't 2004) (requiring showing of "genuine effort to ascertain, in a timely manner, the identity of the defendants"); Tucker v. Lorieo, 291 A.D.2d 261, 261, 738 N.Y.S.2d 33, 35 (1st Dep't 2002) (same).  The plaintiff bears the burden of establishing that "the case at hand falls within an exception to the limitations period."  Minichello

---

and will not be prejudiced in his defense, and (3) the failure to name the proper party previously was the result of an excusable mistake.  Buran v. Coupal, 87 N.Y.2d 173, 178, 638 N.Y.S.2d 405, 408 (1995).

v. Northern Assurance Co. of America, 304 A.D.2d 731, 732, 758
N.Y.S.2d 669, 670 (2d Dep't 2003) (quotation marks ommitted).

It is clear that the plaintiffs here did not diligently seek
to ascertain Dr. Stone's identity before the expiration of the
statute of limitations or anytime thereafter.  To be sure, the
Hospital and Dr. McMurtry were dilatory in producing relevant
medical records.  (Hall Aff., ¶ 5).  The plaintiffs, however,
allege only two half-hearted attempts to obtain this information,
both after the limitations period had tolled.  (Hall Aff., ¶ 5 &
Exh. A).  There is no excuse for the plaintiffs' inaction: there
was nothing stopping Mr. Dooley from accessing his own patient
records at any point before or after the litigation commenced.
And, as plaintiffs admit, review of these records clearly reveal
Dr. Stone to be the anesthesiologist.  (Memorandum of Law in
Opposition to Defendant's Motion to Dismiss at 3; Anesthesia Record
dated July 24, 1997).  Under these circumstances, I cannot find
that the plaintiffs made diligent, genuine efforts to ascertain Dr.
Stone's identity.  Cf. Laureano, 2007 WL 2826649, at *6 (finding
sufficient diligence after counsel questioned numerous individuals,
searched state records, filed claim with Court of Claims,
petitioned plaintiffs' estate for medical records and ultimately
successfully identified defendant within three months of filing
original complaint).

Conclusion

Because the plaintiffs' claim against dr. Stone does not
relate back to the filing of the original Complaint, it is barred

by the statute of limitations.  Dr. Stone's motion for judgment on
the pleadings is therefore granted and the claims against him are
dismissed.



                         SO ORDERED.

                         JAMES C. FRANCIS IV
                         UNITED STATES MAGISTRATE JUDGE


Dated: New York, New York
       January 16, 2009


Copies mailed this date to:

Katharine G. Hall, Esq.
Bailly and McMillan, LLP
244 Westchester Avenue, Suite 410
White Plains, New York 10604

Angela M. Ribaudo, Esq.
575 Eight Avenue, 14th Floor
New York, New York 10018

Garrett Patrick Lewis, Esq.
Wilson, Elser, Moskowitz, Edelman &
     Dicker, LLP
3 Gannett Drive
White Plains, New York 10604

10